STEVEN TRACEY, PETITIONER-DEFENDANT, v. SOUTH RIVER LUMBER COMPANY, RESPONDENT-PROSECUTOR.

Submitted October 6, 1942—Decided February 19, 1943.

Before Justices CASE, DONGES and COLIE.

For the prosecutor, *George S. Applegate, Jr.*, and *Francis M. Seaman.*

For the defendant, *Daniel L. Golden* and *Russell Fleming.*

The opinion of the court was delivered by

DONGES, J.   This case brings up for review a judgment of the Middlesex County Court of Common Pleas affirming a determination of the Workmen's Compensation Bureau which awarded compensation to the petitioner-defendant for disability resulting from an accident alleged to have arisen out of and in the course of his employment by the prosecutor. Counsel have stipulated that, if the court determine a writ should issue, then the matter should be dealt with as if a writ had issued and the merits be decided.

Petitioner, who was sixty-six years of age, was employed as a handy man in and about the lumber yard of the prose-

cutor at South River. His testimony was to the effect that his duties consisted of loading trucks, carrying lumber, painting and pulling spikes from lumber. The claim of the petitioner was that in the afternoon of July 26th, 1941, while engaged in loading lumber on a truck, he felt faint; he "wobbled up and down because he couldn't see;" he tried to get up but fell down; he called for help. The description of the accident contained in the claim petition is as follows: "I collapsed while loading a large piece of lumber on the truck and did not know what happened afterwards." He was taken home and later in the afternoon was found by his daughter-in-law lying on a cot in the yard of his home.

The medical testimony is clear that petitioner suffered a cerebral hemorrhage which caused partial paralysis.

The controversy centers around the question of whether or not the condition of the petitioner is the result of an accident which occurred in the course of his employment. The petitioner testified, as stated, that he was stricken whilst engaged in the laborious work of loading lumber on a truck on a hot day. There is no corroboration of his testimony other than that of his daughter-in-law who, of course, had no knowledge of the incident which occurred at the place of employment. The attending physician testified that work of the type petitioner said he was doing, namely loading a lumber truck, was sufficiently laborious to have produced the hemorrhage from which petitioner was suffering.

On behalf of the prosecutor there is a flat denial of any such occurrence as petitioner claims took place. Max Morris, operator of the lumber yard, testified that petitioner's duties consisted of raking the yard, taking care of a stove and feeding a dog, for which he was paid $6 a week. Morris testified that on the day of the alleged accident he loaded his truck with lumber in the morning. He was assisted by an employee named Joe Shuberda but was not assisted by the petitioner. He testified that he left the lumber yard with his truck before twelve o'clock and did not return until after four o'clock and that there was no truck in his lumber yard at the time petitioner says he was engaged in loading one. As to the time he left the yard and returned, he is corroborated by his wife

and by the man to whom he delivered the truckload of lumber in Englishtown.

Morris further testified that when he returned after four o'clock, he found the petitioner sitting under a shed complaining that his hand and foot were asleep. Petitioner walked to Morris' automobile and was taken home by Morris. When he reached his home, he left the automobile and walked into the yard, where Morris left him. Later in the evening, Mr. and Mrs. Morris called to see him and, at the request of the family, called a physician.

Mrs. Morris testified that early in the afternoon of July 26th, petitioner came to her and complained of feeling ill. She gave him a drink of water and observed that he sat down under a shed. She saw him sitting there later in the afternoon and once walked out to ask him how he felt, to which he replied that he felt a little better.

Both these witnesses were emphatic in their denial that petitioner had done any loading of a truck on the day in question, and further testified that it was not part of the work of petitioner to load trucks at any time. He was an elderly man whose duties were light and who worked pretty much to suit himself, receiving what is little more than nominal compensation.

In this situation we are of the opinion that the petitioner has failed to sustain the burden cast upon him to establish that there was an accident arising out of and in the course of his employment. His testimony is vague and not satisfactory. The denial of the defendant's witnesses is categorical. Petitioner's claim is that the accident occurred after he returned from having lunch at home on the day in question, but it is established by the preponderance of the evidence that there was no truck in the yard on that afternoon. The medical testimony to the effect that his condition could result from his work is based upon the premise that the petitioner had been engaged in the heavy work of loading lumber on a truck. The entire case of petitioner must stand or fall upon the establishment of the fact that he was engaged in this work. Upon no other theory can the award be sustained. Upon this phase of the case, we are of the opinion that the weight of

the evidence is heavily in favor of the prosecutor. It is established by the testimony of three witnesses, Morris, his wife and the customer to whom Morris delivered lumber, that the truck of prosecutor was not in the yard at the time prosecutor claims he was loading it.

Therefore, we are constrained to hold that petitioner's proofs are insufficient and that the judgment must be reversed.